## Ex parte WILSON.
### No. 1844.

District Court, N. D. Texas,
Dallas Division.

Oct. 30, 1945.

Robert Harry Wilson, in pro. per.

Clyde G. Hood, Asst. U. S. Atty., of Dallas, Tex., and Cavett S. Binion, Asst. U. S. Atty., of Fort Worth, Tex., for respondent.

ATWELL, District Judge.

[1] Ordinarily under our division of work in this district a suit growing out of a matter that happened in the Fort Worth Division would have been referred by this court to the judge of that division, Judge Wilson, who has heretofore handled this case. But the statute is such that it requires the judge to whom a writ of habeas corpus is addressed by a citizen who complains of illegal restraint to act upon it; that judge must act, and may not pass it over to another judge. That was determined in some cases arising from Alcatraz prison, and is well established in that circuit. Rutkowski v. Johnston, D. C., 52 F.Supp. 430. When Mr. Wilson forwarded his application for writ of habeas corpus it contained upon its face such serious allegations that it was necessary that he be given a hearing to determine whether or not he was being illegally restrained.

His complaint against the clerk about records which were in the clerk's office seems to be sustained. The clerk seems to have overlooked those records; our clerks are human beings, and they sometimes make mistakes and there should have been a careful examination of the records to see whether there was a proceeding against the petitioner, Wilson, so that he could have been furnished a copy of the documents that have been presented in open court this morning, so that his mind would have been at ease. His application is granted under the statute which he cites, to-wit, the statute holding that indigent persons may come into court and the court is always open to them. The court's eyes are always open to determine, and must be open, to determine whether or not there is a citizen being illegally deprived of his liberty. Therefore, the petitioner's petition was granted, and the United States Attorney was notified and asked to furnish the petitioner with a copy of his, the United States Attorney's, answer to that petition, which he did.

The Attorney General, who was made a party in the application, was not cited because it was not necessary; the United States Attorney under the statute represents the United States in this district, and nobody else could be given that authority except such special United States Attorneys or Special Attorneys General as come into this district, properly commissioned under another statute, which is junior in point of time. The older law was, and, still is, that the United States Attorney represents the United States.

Considering now the more serious aspects: We find that the original sentence was entered on an indictment in 1935 which had four counts in it; under the first and second counts the petitioner

was given five years each, not to run concurrently but consecutively. Upon the third and fourth or the last two counts, he was given five years each, to run concurrently, such last ten years to be served in five years, was probated. That probation was legal, and is for the particular benefit of the prisoner, if and when he obeys the regulations laid down by the probating officers under the authority of the court and under the authority of the law. The petitioner served his first two five-year sentences, with the statutory right of good behavior and during such service was paroled—not probated, but paroled. What he means now, and it is a nice point, is, that the probation officer had nothing to do with a parolee, one of which he was, and that he was at liberty. If he saw fit to violate a local law upon being released as a parolee, that the penitentiary authorities still had jurisdiction over him as a parolee, and that even though he did do wrong, they were the only authorities who could pull him back into the penitentiary. That is a nice legal point. The matter was not discussed today by anyone, but that is the point in this case, and it is answered by the way those matters are practically handled. A parolee who comes back, we will say, to his own district from which he was sentenced or goes to some other district from which he was not sentenced, is under the jurisdiction of the parole officer who is usually the local probation officer and he is given jurisdiction over that parole who checks up on him, and makes a report to the penitentiary. In addition to that, the probation officer at Fort Worth had an order from the United States District Judge, Judge Wilson, probating the petitioner, when he had finished the ten-year term in prison. That must be legally construed to mean that when he again became a free man, and that phrase, "free man," may be applied to the parolee, though he was not immune from the legal processes of his country. He could not run rough-shod over and violate laws merely because he was a parolee, and feel that he could not be returned to the penitentiary except by a parole officer from the penitentiary. The probation of the last five years was still in operation, and was legal. It was the duty of the probation officer at Fort Worth to report the matter, if there was a matter he thought should be reported, to the District Judge, who was Judge Wilson. The record now discloses that such report was made, and Judge Wilson gave the petitioner a hearing on some offense with which I am not familiar, but apparently it was admitted by the petitioner. Judge Wilson considered it of sufficient seriousness to undo the probation and he ordered him into the custody of the prison authorities to serve the last ten years, which could be served in five years. Those steps were legal. That is what he is now serving.

Now the next mental worry is what right has the Leavenworth warden, or, Mr. Bennett, to send a hold order against him with reference to the unserved portion of the paroled part of the ten-year consecutive sentence. That right arises out of the alleged fact,—and the court does not pass on that, and it is not necessary to make any finding under that at the present time,—but that arises out of the alleged fact that during the time the petitioner was on parole on the first two five-year sentences, he did not do what he should have done as a paroled prisoner, to-wit, live legally and lawfully. Whether the warden at Leavenworth will see fit to detain him longer on that, is a matter the court is not required to act upon at this time. It is his duty to place that order, and the petitioner can talk with him and try to persuade him, or write to him and see what can be done about that. Fifteen years seems like quite a while for him to be detained, but I don't know exactly what the offense was, perhaps the forging of some checks, or something of the sort, and the trial judge had ample jurisdiction to fix a sentence that he thought appropriate.

The petitioner is a wise man, and he is in an institution that is one of the prides of the nation, and I need not say to him that he will be taken care of while he is there.

The petitioner is remanded to the custody of the Seagoville authorities.